## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

Seretse Young,

             Plaintiff,

vs.

Law Office of Amber M. Brehm,

             Defendant.

Court File No.: 2:18-cv-02615-JAR-GEB

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT UNDER RULES 12(b)(1) AND 12(b)(6)**

## INTRODUCTION

Plaintiff Seretse Young initially filed an individual action against Defendant Law Office of Amber M. Brehm ("Brehm"). Plaintiff challenged a letter Brehm sent to him regarding a financial obligation he failed to pay. [*See* Doc. No. 1.] In response, Brehm moved to dismiss Plaintiff's complaint. [*See* Doc. No. 4.] Plaintiff then filed an amended complaint, in which he purports to represent a proposed putative class.[1] [*See* Doc. No. 8.]

Plaintiff's attempt to save his alleged claim by amendment does not change the ultimate facts of the case. The challenged letter stated the amount of Plaintiff's outstanding financial obligation as of the date of the letter as follows: **"Amount Due: $234 + interest to date $14.93."** The letter also set out the nature of Brehm's involvement with the collection process.

Notwithstanding Brehm's clear and accurate communication concerning the subject debt, and Brehm's involvement in the effort to collect it, Plaintiff now attempts to secure a recovery under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") on behalf of

---

[1] Plaintiff's counsel asked for, and the undersigned agreed to, an extension of time for Plaintiff to respond to Brehm's motion to dismiss the original complaint. [Doc. No. 6.] But rather than respond to Brehm's motion per the stipulation and order, Plaintiff filed an amended complaint, which, like the original complaint, continues to fail to state a claim. [*See* Doc. No. 1; *cf.* Doc. No. 8.]

a purported putative class.  Brehm hereby moves to dismiss Plaintiff's attempted claim (as now alleged in the amended complaint) pursuant to Rule 12(b)(1) and Rule 12(b)(6) on the following grounds:

1. Plaintiff lacks Article III standing given his lack of a concrete injury-in-fact;

2. Brehm's letter to Plaintiff clearly and accurately stated the amount of Plaintiff's debt, including "interest to date," which is all the FDCPA requires;

3. Brehm did not "overshadow" Plaintiff's right to dispute the debt;

4. Brehm accurately stated its role in the collection process; and

5. Plaintiff fails to state a claim under § 1692f of the FDCPA because he does not allege any independent conduct in support of that attempted claim.

## **PROCEDURAL HISTORY**

On November 15, 2018, Plaintiff filed his original complaint.  [Doc. No. 1.]  On December 12, 2018, Brehm moved to dismiss Plaintiff's original complaint.  [Doc. No. 4.]  On December 21, 2018, Brehm agreed to Plaintiff's request to stipulate to allow Plaintiff an extended deadline to respond to Brehm's motion to dismiss.  [Doc. No. 6.]  On January 2, 2019, rather than filing a responsive memorandum, Plaintiff filed an amended complaint.  [Doc. No. 8.]

Plaintiff's "amended" claims remain essentially the same, though Plaintiff now purports to represent a proposed putative class.  [*See id.* at ¶¶ 6, 12-20.]  Plaintiff did correct the amount of the debt as stated in the Letter (which was evident from the face of the Letter itself but inaccurately pled in the original complaint).  [*See* Doc. No. 1 at ¶ 22, Ex. A; *cf.* Doc. No. 8 at ¶ 32, Ex. A.]  Plaintiff's other attempts to rescue his alleged "overshadowing" and "attorney involvement" claims by amendment are unavailing.  [*See* Doc. No. 8 at ¶¶ 50, 55; *cf.* Doc. No. 1 at ¶¶ 40, 45.]  As discussed below, Plaintiff's claims fail as a matter of law, notwithstanding the attempted amendment.

## BACKGROUND

Plaintiff incurred a financial obligation to Geary Community Hospital that he failed to pay.[2] [Am. Compl. ¶ 22.]  As a result, Plaintiff's account was placed with Brehm for collection. [*Id.* at ¶ 26.]

Brehm sent Plaintiff a letter regarding the subject account (the "Letter").  [*Id.* at ¶ 28, Ex. A.]  The Letter informed Plaintiff that he owed $234 "+ interest to date $14.93."  [*Id.* at ¶ 32, Ex. A.]

Notwithstanding this clear and accurate statement of the amount due—including that $14.93 of interest had accrued on the account *to date*—Plaintiff nonetheless alleges that "[t]he [L]etter fails to disclose to the consumer whether the account will continue to accrue fees and interest."  [*Id.* at ¶ 33.]  Plaintiff does *not* allege that the amount stated in the Letter is any way inaccurate, or that he does not owe the debt.  Similarly, Plaintiff does *not* allege that he paid or even attempted to pay the debt in response to the Letter.  Plaintiff instead chooses to nitpick the Letter in an effort to secure some money from Brehm.

In any event, the Letter further informed Plaintiff that "[t]he … account has been referred to me for collection by Account Recovery Specialists, Inc. on behalf of [Geary Community Hospital]."  [*Id.* at Ex. A.]  Along with the mandatory FDCPA disclosures regarding Plaintiff's right to dispute the debt, the Letter specifically informed Plaintiff that, "[a]t this time, no attorney with this office has personally reviewed the particular circumstances of your account.  However, if you fail to contact this office, our client may consider additional remedies to recover the balance due."  [*Id.*]

---

[2] The subject debt in this case is the same debt at issue in *Young v. Account Recovery Specialists, Inc.*, *Young v. Account Recovery Specialists, Inc.*, 18-cv-2419-JAR-KGG.  [*See id.* Doc. No. 1 at ¶¶ 22-23; *compare* Doc. No. 8 in the instant matter at ¶¶ 22-23.]  Perhaps not surprisingly, Plaintiff alleges nearly-identical claims in this matter as in the ARSI matter.  Notwithstanding, and despite the undersigned's requests, Plaintiff's counsel has failed to inform either court of these related matters.

Despite Brehm's clear and accurate statement of its involvement in the collection process, Plaintiff alleges that "[i]t is deceptive to the consumer to have a letter signed by an attorney while claiming no attorney has reviewed the letter," and that "[i]it is also improper for an attorney to sign a letter that they have not reviewed." [*Id*. at ¶¶ 44-45.] Plaintiff further alleges, without any factual support, that Brehm somehow "threaten[ed] to take [an] action that cannot legally be taken or that is not intended to be taken …." [*Id*. at ¶ 50(b).]

Plaintiff does *not* plead that Brehm improperly attempted to collect the subject debt, or that Brehm misstated its involvement in the collection process. Likewise, Plaintiff does *not* plead that he took any action (or avoided taking any action) concerning the debt because of Brehm's (accurate) statement of its involvement in the collection process in the Letter, or the stated amount of the debt.

## ARGUMENT

## I.      LEGAL STANDARDS

### A.      Jurisdictional Challenges under Rule 12(b)(1)

A district court may dismiss a party's claim for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Fed. R. Civ. P. 12(b)(1); *Pueblo of Jemez v. U.S.*, 790 F.3d 1143, 1151 (10th Cir. 2015).

"As a general rule, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take one of two forms: (1) facial attacks; and (2) factual attacks." *Paper, Allied-Industrial, Chemical And Energy Workers Intern. Union v. Continental Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005) (citing *Holt v. U.S.*, 46 F.3d 1000, 1002-03 (10th Cir. 1995)). Where, as here, a party mounts "a facial attack on the complaint's allegations as to subject matter jurisdiction … a district court must accept the allegations in the complaint as true." *Holt*, 46 F.3d at 1002 (citing *Ohio Nat'l Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990)).

This said, the district court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Peterson v. Martinez*, 707 F.3d 1197, 1206 (10th Cir. 2013) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Furthermore, "[t]he burden of establishing a federal court's subject matter jurisdiction rests upon the party asserting jurisdiction"—in this case, Plaintiff. *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quotation marks omitted and citing *Pueblo of Jemez*, 790 F.3d 1143, 1151).

### B.    Motions to Dismiss under Rule 12(b)(6)

To withstand a motion to dismiss, the pleading must contain sufficient allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). While well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to plaintiff (*see Archuleta v. Wagn*er, 523 F.3d 1278, 1283 (10th Cir. 2008)), the court need not credit conclusory allegations. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

In FDCPA cases, courts consider collection notices from the vantagepoint of the "least sophisticated consumer," who, though lacking the "astuteness of a 'Philadelphia lawyer,'" nonetheless "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Ferree v. Marianos*, 129 F.3d 130, 1997 WL 687693, at *1 (10th Cir. 1997) (unpublished Table opinion) (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996); *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)); *see also Fouts v. Express Recovery Services, Inc.*, 602 Fed. App'x 417, 421 (10th Cir. 2015) (citing *Clomon* for least sophisticated consumer standard); *Boedicker v. Midland Credit Management, Inc.*, 227 F. Supp.3d 1235, 1238 (D. Kan. 2016) (same).

The Tenth Circuit has further explained that "[t]he FDCPA does not result in liability for every statement later alleged to be inaccurate, no matter how small or ultimately harmless." *Maynard v. Cannon*, 401 Fed. App'x 389, 397 (10th Cir. 2010).

Put simply, the least sophisticated consumer standard not only effectuates the FDCPA's consumer-protection objectives, but it also advances the Act's "dual purpose" to "protect[] debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Clomon*, 988 F.2d at 1320.

## II.     PLAINTIFF LACKS STANDING TO PROSECUTE THIS ACTION.

Plaintiff bears the burden to establish Article III standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Pueblo of Jemez*, 790 F.3d at 1151.  Plaintiff has not established any concrete harm as a result of the Letter, nor has Plaintiff established that the Letter created a real risk of harm to him.  The amended complaint in no way cured this critical defect.

In short, Plaintiff has failed to establish an injury-in-fact and therefore lacks standing under the United States Constitution.

### A.     Plaintiff Must Establish a "Concrete" Injury-in-Fact.

Article III of the United States Constitution "confines federal courts to adjudicating actual 'cases' and 'controversies.'"  U.S. Const., art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1991).  Accordingly, for subject-matter jurisdiction, the court must be presented with a justiciable case or controversy within the meaning of Article III.  *Allen v. Wright*, 468 U.S. 737, 750-51 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014).

The Supreme Court has articulated the "irreducible constitutional minimum of standing," which consists of three elements: (1) the plaintiff must have suffered an injury-in-fact (i.e., one that is "concrete and particularized" or "actual and imminent, not conjectural or hypothetical)";

(2) which injury is "fairly traceable to the challenged action of the defendant;" and (3) is capable of redress by "a favorable decision" from the court.  *Lujan*, 504 U.S. at 560-61 (internal quotation marks and citations omitted).

The Supreme Court recently revisited the "injury-in-fact" predicate in *Spokeo v. Robins*, 136 S. Ct. 1540 (2016).  In *Spokeo*, the plaintiff alleged a procedural violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., but failed to allege any concrete harm suffered as a result of the claimed violation.  *Id.* at 1550.

The Supreme Court concluded in *Spokeo* that in order to allege an "injury-in-fact," the claimed injury must be *both* concrete *and* particularized.  *Id.* at 1548.  Further, the Court held that to meet the injury-in-fact predicate, a plaintiff must demonstrate "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'"  *Id*. (citing *Lujan*, 504 U.S. at 560).

To be "particularized," a plaintiff "must allege a distinct and palpable injury to himself." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206 (1975) (emphasis added and internal citations omitted).  The alleged injury must "affect the plaintiff in a personal and individual way."  *Lujan*, 504 U.S. at 560 n.1.

To be "concrete," the alleged injury cannot be abstract – it must be "real."  *Spokeo*, 136 S. Ct. at 1548 (emphasis added).  In some instances, an injury need not be tangible to be concrete; intangible harms in certain circumstances can satisfy the requirement.  *Id*. at 1549.  The Supreme Court did note that "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law.'"  *Id*. (quoting *Lujan* at 578).

But notably, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id*.

That is, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id*.

In sum, even if a plaintiff alleges a "bare procedural violation, divorced from any concrete harm, [such plaintiff cannot] satisfy the injury-in-fact requirement of Article III." *Id.*

### B.     Post-*Spokeo* Standing Decisions

Consistent with *Spokeo,* the D.C. Circuit recently held that "the legislature cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing under Article III."  *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016) (internal quotation marks omitted) (citing *Spokeo* at 1547-48). Federal courts of appeal have affirmed this principle post-*Spokeo*.  *See, e.g., Khan v. Children's Nat'l Health System*, *Lee v. Verizon Communication, Inc.*, 837 F.3d 523, 529 (5th Cir. 2016) (ERISA claim); *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016) (New York real property law).

One Circuit Court of Appeals recently explained that the Supreme Court had rejected the "absolute view" that "a violation of a statutory right constitutes an injury in fact that is sufficient by itself to establish standing under Article III" and specifically rejected the contention that a plaintiff need not "show any 'actual injury' arising from" the defendant's alleged statutory violation. *Braitberg v. Charter Commc'ns., Inc.*, 836 F.3d 925, 929-30 (8th Cir. 2016).

In addition, another Circuit recently held that a so-called alleged "informational injury" under the FDCPA is insufficient to establish a concrete, injury-in-fact under Article III.  *See Hagy v. Demers & Adams*, 882 F.3d 616, 622-23 (6th Cir. 2018) (affirming the dismissal of a FDCPA claim based on failure to make a required disclosure because plaintiff failed to allege a cognizable injury-in-fact and holding that "[s]tanding is not met simply because a statute creates a legal obligation" or "allows a private right of action for failing to fulfill this obligation" and

concluding that "Congress cannot override this baseline requirement of [standing based on a cognizable injury traceable to the defendant] . . . by labeling the violation of *any* requirement of a statute a cognizable injury").

The District of Nevada recently considered a similar challenge (as presented in the case before this Court) of a collector's interest disclosure in *Martinez v. Aargon Agency, Inc.*, No. 17-cv-789, 2018 WL 4355162 (D. Nev. Sep. 12, 2018).  The *Martinez* plaintiff alleged that the collector's letter failed to properly advise her about the accrual of interest on her debt because it included a line item that stated "Interest Accrued: $0.00," along with a disclosure that the balance of her debt may increase due to accrued interest.  *Id*. at *1.  The collector argued that the plaintiff was "suing for purely procedural violations [of the FDCPA] without having suffered any actual harm."  *Id*. at *2.  The court agreed

> While Martinez has shown that she was confused by the letter, her subjective confusion does not create an FDCPA violation.  Alleged violations of the FDCPA are considered under the "least sophisticated debtor" standard, which is designed to protect less savvy consumers from targeting by debt collectors.
>
> …
>
> The letter that Martinez received is not deceptive or misleading under this standard.  The top of the letter states the amount of interest that had "accrued" as of the date of the letter: none had "accrued" yet, so the amount listed was "$0.00."  But there is no statement indicating that the amount of interest is static (i.e., will not accrue or is not accruing).  Rather, the letter states the amount that Martinez owed "as of the date of [the] letter" and cautioned that the amount owed "may vary due to payments and/or accrual of interest."  Even the least sophisticated debtor could not infer from this letter that no interest would ever accrue on Martinez's account.  Nor is the letter false.  Martinez does not dispute that Aargon intended to charge interest and admits in her reply to Aargon's motion that she understood that the debt would, in fact, accrue interest ….
>
> Martinez has not shown sufficient evidence to support her allegation that the letter was, in fact, false or misleading.  Without doing so, she has not carried her burden to show that she suffered an injury-in-fact sufficient to confer standing.

*Id*. at *3.

### C.      Plaintiff Fails to Establish a Concrete Injury-in-Fact.

Plaintiff fails to allege *how* the Letter—and, more specifically, its statement setting out the amount of Plaintiff's debt ("Amount Due: $234.00 + interest to date $14.93") as well as the statements regarding Brehm's involvement with the collection process—caused a concrete, particularized injury-in-fact.

To be sure, Plaintiff does <u>not</u> challenge the validity of the debt.  Likewise, Plaintiff does <u>not</u> allege that he disputed the debt to Brehm or anyone.  <u>Nor</u> does Plaintiff allege that he would have challenged or disputed the debt if different disclosures had been made.  Similarly, Plaintiff does <u>not</u> allege he made any payment as a result of the Letter (or that he would have, had a different disclosure been made), or took any action (or failed to take any action) as a result of the statement of the amount of the debt or as a result of Brehm's statement of its involvement with collection process.

In fact, Plaintiff does <u>not</u> allege that he took *any* action following receipt of the Letter (other than to go to an attorney, which is obvious from the filing of the complaint).  Additionally, Plaintiff does not allege that the challenged statement of the amount of his debt, or Brehm's involvement in attempts to collect it, caused him harm, or much less that they prompted him to respond differently to the Letter than he otherwise would have had different disclosures been included.  Instead of alleging a concrete, particularized injury arising from the Letter, Plaintiff simply makes conclusory allegations regarding alleged "harm" and "damage;" which allegations amount to nothing more than a threadbare recitation of Plaintiff's legal theories.  [*See* Am. Compl. ¶¶ 38-40, 46, 51, 56, 61.]

In short, Plaintiff attempts to allege a supposed, bare procedural violation of the FDPCPA coupled with a conclusory allegation of subjective "confusion" and "deception."  Courts have deemed such an attempt insufficient to confer standing.  *See, e.g., Martinez*, 2018 WL 4355162,

at *3.  Dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) therefore is required.

## III.   IN ANY EVENT, THE CHALLENGED LETTER DID DISCLOSE THE AMOUNT OF THE DEBT AS REQUIRED BY THE FDCPA.

Even if Plaintiff had Article III standing, he nonetheless fails to allege a plausible claim to relief based on the Letter's statement of the amount due and Plaintiff's validation rights

The FDCPA requires debt collectors to inform consumers of the "amount of the debt" in the initial communication.  15 U.S.C. § 1692g(a)(1).  Likewise, a debt collector must avoid misrepresenting "the character, amount, or legal status" of the debt.  15 U.S.C. § 1692e(2)(A).

The Tenth Circuit has yet to specifically interpret these subdivisions of the FDCPA in the context of a debt that increases over time due to accrued interest (or fees[3]).  But the Seventh Circuit, in a case many district courts consider "seminal" on this issue, has provided guidance to debt collectors regarding debts that may increase.  *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols and Clark, LLC*, 214 F.3d 872 (7th Cir. 2000); *see also, e.g., Walker v. Shermeta, Adams, & Von Allmen, P.C.*, No. 13-cv-14932, 2014 WL 11309742, at *3 (E.D. Mich. Apr. 25, 2014).

The line of interest-disclosure cases following *Miller* demonstrates the Act's focus on debt collectors' responsibility under §§ 1692g and 1692e: i.e., set forth a clear and accurate quantification of the amount of the debt at the time the letter is sent.  The Tenth Circuit has cited the *Miller* progeny with approval.  *See Jones v. Midland Funding*, 656 Fed. App'x 913, 915-16 (10th Cir. 2016) (citing *Hahn v. Triumph P'Ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009)).

---

[3] Plaintiff vaguely alleges that he believed a fee may be added to his debt.  [*See* Am. Compl. ¶¶ 38-39.]  But Plaintiff alleges no factual support for his conclusory allegation in this regard.  In any event, Brehm did <u>not</u> add any collection "fees" to Plaintiff's debt, nor has Plaintiff alleged it did.

In short, since *Miller*, the Seventh Circuit has created a clarity standard by which "amount of the debt" claims are to be judged as a matter of law, and the Tenth Circuit' approach aligns with that standard.  The Letter satisfies the clarity standard as to the amount of Plaintiff's debt.

Plaintiff attempts to rely on the Second Circuit's opinion in *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72 (2d Cir. 2016) for the proffered proposition that a debt collector must affirmatively state that a debt may increase due to accrued interest and fees in communications with consumers.  [Am. Compl. ¶ 35.]  But that decision is inconsistent with the more robust *Miller* line of cases—which the Tenth Circuit appears to endorse—and in any event does not bind this court and is distinguishable.  Here the Letter did state "interest to date," which can only be reasonably interpreted as interest is accruing (assuming a disclosure was required).

Plaintiff further asserts a conclusory and vague claim that the challenged letter somehow "overshadowed" his validation rights. But the starting point for such a claim is whether Brehm accurately communicated the amount of the debt to Plaintiff, and whether it advised him of his right to request verification of the debt.  It did as a matter of law and nothing in the Letter can be interpreted as an "overshadowing" of such right.   Accordingly, Plaintiff's attempted "overshadowing claim" fails as a matter of law.

In short, Brehm discharged its obligation to clearly and accurately inform Plaintiff about the "amount of the debt" in the Letter.  All of Plaintiff's attempted claims regarding the amount of the debt and his right to dispute the debt fail as a matter of law.

A.     **Brehm Clearly and Accurately Quantified the Amount of the Debt, Including the Amount of Interest "<u>to Date</u>."**

Plaintiff challenges the Letter citing to §§ 1692e, 1692f, and 1692g of the FDCPA.  [Am. Compl. ¶¶ 48, 50, 53, 58.]

As an initial matter, none of those subsections requires a debt collector to disclose that interest or fees have accrued, or might accrue on a debt.  Instead, the Act requires only that the debt collector accurately and clearly quantify the <u>amount</u> of the debt <u>due at the time the letter is</u> <u>sent</u>.  *See Miller*, 214 F.3d at 875;[4] *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944 (7th Cir. 2004); *Barnes v. Advanced Call Center Technologies, LLC*, 493 F.3d 838, 840-41 (7th Cir. 2007); *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643 (7th Cir. 2009); *Hahn v. Triumph P'ships LLC*, 557 F.3d 755 (7th Cir. 2009).

Here, Brehm did just that, <u>including</u> an additional disclosure of the amount of interest that had accrued on Plaintiff's account "*to date*."  [Am. Compl. Ex. A.]  Even a least sophisticated or unsophisticated consumer would understand from the Letter the amount sought to be collected. Moreover, even the least sophisticated consumer would further understand that interest continued to accrue on the account given the "to date" notation, even if this disclosure were required (which it is not).

Put simply, Brehm discharged its obligation to inform Plaintiff of the "amount of the debt," and Plaintiff's attempted claim fails as a matter of law.

> **1.**     **The *post-Miller* cases favor a "clarity standard" for communicating the "amount of the debt," which Brehm satisfied.**

Following *Miller*, the Seventh Circuit rejected "amount of the debt" claims that rely on hyper-technical readings of the FDPCA in favor of a "clarity standard."  *See Barnes*, 493 F.3d at

---

[4] Although the Seventh Circuit offered so-called "safe harbor" verbiage debt collectors may <u>elect</u> to use in letters seeking to collect debts, the court has repeatedly held that it is not *required*. *Miller*, 214 F.3d 872 at 876 ("Of course we do not hold a debt collector *must* use this form of words to avoid violating the statute; but if he does … he will as a matter of law have discharged his duty to state clearly the amount due."); *see also Williams v. OSI Edu. Servs.*, 505 F.3d 675, 680 (7th Cir. 2007) (bold emphasis added) ("We made clear in *Miller* that 'we do not hold that a debt collector *must* use this form of words to avoid violating the statute.'  Although the safe harbor was offered in an attempt to bring predictability to this area and conserve judicial resources**, it is compliance with the statute, not our suggested language, that counts**."); *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 369 (7th Cir. 2018) (same).

840-41 (citing *Miller*, 214 F.3d 872 and *Veach v. Sheeks*, 316 F.3d 690 (7th Cir. 2003) in support of employing "clarity standard" to analyze "amount of the debt" claims); *see also Chuway*, 362 F.3d at 948; *Pantoja v. Portfolio Recovery Associates, LLC*, 852 F.3d 679, 687 (7th Cir. 2017) (citing *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 323 (7th Cir. 2016) and *Chuway*, at 947-48 for proposition that "FDCPA requires clarity.").

The basic inquiry, therefore, is whether the debt collector clearly stated the amount of the debt. *See Miller*, 214 F.3d at 876 ("What [debt collector] certainly could do was state the total amount due—interest and other charges as well as principal—on the date the dunning letter was sent."). Recent appellate jurisprudence demonstrates that this requirement is met with a simple and accurate quantification of the debt in the notice.

For instance, in *Wahl*, the debt collector conveyed the amount of the consumer's debt in a collection letter by breaking down the balance by principal and accrued interest. *Wahl*, 556 F.3d at 644. The consumer argued this was false because the collector had purchased the debt, and the "principal balance" included both principal and interest that accrued on the account while the original creditor still owned it. *Id*. at 645. The *Wahl* court characterized the consumer's argument as follows: "*Debt collectors need not say anything more than the amount sought*, but if they do elect to specify principal and interest components, they must indicate the principal charges levied by the original account holder, the interest levied by the original account holder, and the interest levied by the debt collector." *Id*. (emphasis added).

The *Wahl* court went on to reject the consumer's argument, holding:

> The unsophisticated consumer, with a reasonable knowledge of her account's history, would have little trouble concluding that the 'principal balance' included interest charged by [the original creditor]. Granted, [the debt collector] could have *elected* to go a step further, disclosing the components of the debt it acquired—such as what [the consumer] charged on the card versus the interest and late fees levied by [the creditor]—but it wasn't a matter of compulsion. It was enough for purposes of § 1692e that [the debt collector's] statements were not false or misleading.

14

*Id*. at 646.

Indeed, with respect to whether interest and principal need to be conveyed to the consumer as separate component parts to set forth the "amount of the debt," the Seventh Circuit specifically held that "a debt collector need <u>not</u> break out principal and interest; it is enough to tell the debtor the bottom line.   So [debt collector] could have sent [consumer] a letter demanding payment of [the debt] <u>*without* saying where the figure came from</u>."  *Hahn*, 557 F.3d at 757 (emphasis added and citing *Barnes*, 493 F.3d 838); *see also Janetos v. Fulton, Friedman & Gullace, LLP*, No. 12-cv-1473, 2015 WL 1744118, at *5 (N.D. Ill. Apr. 13, 2015), *rev'd on other grounds* at 825 F.3d 317 (7th Cir. 2016) (emphasis added and citation and internal quotation marks omitted) ("For the FDCPA's purposes, it is irrelevant whether the debt is expressed as a 'bottom line' amount or broken down into principal and interest … **[a] dollar due is a dollar due**.").

 In short, the entire doctrinal line of "amount of the debt" cases following *Miller*, including *Chuway*, *Barnes*, *Wahl*, and *Hahn*, is unified by the common thread of clearly and accurately stating the amount of the debt due at the time the letter is sent to the consumer. Nothing more is required.

The Tenth Circuit recently employed this clarity standard in *Jones v. Midland Funding*, 656 Fed. App'x 913 (10th Cir. 2016).  In *Jones* the consumer claimed that the collector falsely misrepresented the amount of the debt and attempted to collect interest and fees that were not authorized by the underlying credit card agreement.  *Id*. at 914.  The consumer specifically alleged that the collector did "not know the interest rate" applicable to the debt and that the underlying "credit card agreement [did] not specify it."  *Id*. at 916-17.  The Tenth Circuit held that the collector complied with the FDCPA:

> [Consumer's] complaint on appeal is narrow.  He does not contest the amount of
> the debt at the time it was purchased by Midland and he acknowledges the credit
> card agreement allows for the collection of interest.  He complains only that
> Midland does not know the interest rate and the credit card agreement does not
> specify it.  But the FDCPA only prohibits a debt collector from collecting interest
> not authorized by the debt agreement.  *See* 15 U.S.C. § 1692f(1).  **It does not
> require a debt collector to specify the interest rate; the debt collector need
> only "tell the debtor the bottom line."**

*Id.* (emphasis added and quoting *Hahn*, 557 F.3d at 757 for proposition that "a debt collector

need not break out principal and interest … [s]o [the debt collector] could have sent [the debtor]

a letter demanding payment of the $1,134.55 without saying where it came from").

Tenth Circuit and Seventh Circuit jurisprudence makes clear the heart of the analysis for

"amount of the debt" claims: Was the consumer told what was owed when the letter was sent?

Here, there is no dispute that Plaintiff was.  In fact, Plaintiff does not even attempt to

allege that the "$234 + interest to date $14.93" stated in the Letter was wrong or in any way

numerically inaccurate.  This is because that amount *was* the amount due on the date of the

Letter, which Brehm in turn accurately conveyed to Plaintiff in the now-challenged Letter.  That

is all the FDCPA requires.  Plaintiff's alleged "amount of the debt" claim therefore fails.

> **2.     Additionally, even if disclosure were required, the least sophisticated
> consumer would understand that interest was accruing because the
> balance included "interest *to date*."**

Notwithstanding Brehm's clear communication of the amount of the debt in the Letter

("Amount Due: $234.00 + interest to date $14.93"), Plaintiff claims that "Defendant's failure to

disclose more information about the accrual of interest and fees was confusing to Plaintiff since

it was unclear as to if and when his account would continue to be charged additional fees and

interest." [Am. Compl. ¶ 39.]  This is a classic example of a "bizarre" and "idiosyncratic"

interpretation that will not support a viable FDCPA claim.

Plaintiff's strained interpretation of the Letter ignores the fact that the least sophisticated

consumer is "presumed to possess a rudimentary amount of information about the world and a

willingness to read a collection notice with some care." *Boedicker v. Midland Credit Management, Inc.*, 227 F. Supp.3d 1235, 1238 (D. Kan. 2016). That "rudimentary amount of information" includes "making basic, reasonable and logical deductions and inferences" about the debt. *Dewees v. Legal Servicing, LLC*, 506 F. Supp.2d 128, 132 (E.D.N.Y. 2007).

Brehm discharged its obligation to clearly and accurately communicate the amount of Plaintiff's debt in the Letter. No affirmative disclosure about continued accrual of interest (or "fees") was required. But even if it were, the least sophisticated consumer—reading the collection notice carefully and making only basic logical deductions and inferences about its content—would (unless he consciously chose to ignore it) see interest was accruing based on the qualifier "interest *to date*." To ignore this particular language, or interpret it another way, would be "bizarre" and "idiosyncratic."

Plaintiff also makes passing reference in his complaint to "fees." There is no elaboration other than the mere mention. In any event, as to "fees," Plaintiff fails to allege that Brehm added any "fees" to his debt, or that it planned to at any time in the future. Again, the FDCPA does not require a debt collector to disclose the *mere possibility* that additional sums could be added to the debt in the future: "the 'amount of the debt' provision is designed to inform the debtor (who, remember, has a low level of sophistication) of that the *obligation* is, *not* what the final, worst-case scenario *could* be." *Veach*, 316 F.3d at 693.

In sum, the least sophisticated consumer reading the challenged Letter in its entirety would conclude that Plaintiff's debt would continue to accrue interest based on the Letter's disclosure ("Amount Due: $234.00 + interest *to date* $14.93"). And as to "fees," Brehm was not required to make any affirmative disclosure about the mere possibility about additional "fees," and there were no such fees.

### 3.    *Avila* does not bind this Court and should be disregarded because it conflicts with the clarity standard described above.

In his complaint, Plaintiff bases his claim on the Second Circuit's reasoning in *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72 (2d Cir. 2016) and asks this Court to graft an un-codified holding in that case onto the plain language of the FDCPA that would require debt collectors to disclose that interest (and "fees") are accruing on a consumer debt.  [Am. Compl. ¶ 35.]  Not only is *Avila* non-binding on this court, it conflicts with the well-developed Seventh Circuit case law—endorsed by the Tenth Circuit—that only requires debt collectors to quantify the amount of the debt at the time the letter is sent, and nothing more.

The clearest indicator that the FDCPA requires no affirmative statutory-interest disclosure is found in *Miller*.  There, the Seventh Circuit had the opportunity to <u>require</u> affirmative disclosure, but didn't, instead choosing to create <u>permissive</u> safe harbor language. *Miller*, 214 F.3d 872 at 876; *see also Williams v. OSI Edu. Servs.*, 505 F.3d 675, 680 (7th Cir. 2007); *Boucher v. Finance Sys. of Green Bay, Inc.*, 880 F.3d 362, 367 (7th Cir. 2018).  When the Seventh Circuit determines that the FDCPA requires a certain form of language or a particular disclosure, it so holds, without equivocation.

As discussed above, the Seventh Circuit's focus on clear quantification of the debt has continued in more recent cases, as well.  *See Veach v. Sheeks*, 316 F.3d 690 (7th Cir. 2003); *Barnes v. Advanced Call Center Technologies, LLC*, 493 F.3d 838, 840-41 (7th Cir. 2007); *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643 (7th Cir. 2009); *Hahn v. Triumph P'ships LLC*, 557 F.3d 755 (7th Cir. 2009); *Janetos v. Fulton, Friedman & Gullace, LLP*, No. 12-cv-1473, 2015 U.S. Dist. LEXIS 48774, at *13 (N.D. Ill. Apr. 13, 2013), *rev'd on other grounds* at 825 F.3d 317 (7th Cir. 2016).

The entire line of *Miller* cases, including *Hahn*, is unified by the common thread of accurate quantification of the debt.  The Tenth Circuit has adopted the *Hahn* court's reasoning.

*See Jones v. Midland Funding*, 656 Fed. App'x 913 (10th Cir. 2016). This Court therefore should disregard *Avila* as it conflicts with Seventh Circuit precedent—which the Tenth Circuit endorsed—and instead find, as a matter of law, that Brehm's Letter complied with the FDCPA.

### B.   Brehm Did Not "Overshadow" Plaintiff's Validation Rights.

Section 1695g(b) provides, in pertinent part, that "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 U.S.C. § 1692g(b). Plaintiff alleges that "[t]he addition of the undefined interest and fees and the threat of a balance increase overshadows the 'g-notice' language and coerces the Plaintiff not to exert his rights under the [FDCPA]." [Am. Comp. ¶ 37.]

As an initial matter, it is unclear how Plaintiff can, on the one hand, allege that Brehm failed to include a disclosure regarding the continued accrual of interest (and "fees"), while on the other hand, allege that Brehm somehow "threatened" to increase his balance via increased interest (and "fees"). For this reason alone, Plaintiff's claim fails. In any event, Plaintiff fails to state an "overshadowing" claim under § 1692g for the following reasons, as well.

Overshadowing claims only arise when a debt collector informs the consumer <u>during</u> the 30-day period following the initial notice that the collector intends to take a certain action that conflicts with the consumer's right to request verification of the debt during that period. *See Friedman v. Leading Edge Recovery Solutions, LLC*, No. 13-cv-9034, 2014 WL 1674083, at *3 (N.D. Ill. Apr. 28, 2014) (quoting *Durkin v. Equifax Check Servs.*, 406 F.3d 410, 414 (7th Cir. 2005)) ("Overshadowing generally occurs when the debt collector indicates the time for disputing the debt has passed or when the statements by the debt collector 'misrepresent or cloud the amount of time remaining to dispute the debt.'").

19

Typically, such claims involve a demand for payment within the 30-day period to prevent some further collection action, or a demand that otherwise "set[s] deadlines contrary or contradictory to the thirty-day validation period." *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012); *see also Rachoza v. Gallas & Schultz*, No. 97-cv-2264, 1998 WL 171280, at *5 (D. Kan. Mar 23, 1998) (letter stating if debt not paid within ten days collector would pursue legal action); *Miller v. Payco-General Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir. 1991); *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998). Notably, the "validation period … is *not* a grace period; a debt collector is 'perfectly free' to demand payment and pursue collection efforts, including an appropriate lawsuit against the debtor, within the validation period." *Durkin*, 406 F.3d at 416.

As discussed above, Brehm <u>did</u> inform Plaintiff of the amount of the debt and <u>did</u> inform Plaintiff of his right to dispute the debt. Brehm also specifically advised Plaintiff that:

> While your right to dispute the validity of the debt continues for a full 30 days, I am permitted by federal law to proceed with collection efforts including filing suit against you during this time period or until I receive a notice of dispute from you.

[Am. Compl. Ex. A.]

This statement accurately apprised Plaintiff of his right to dispute the debt pursuant to § 1692g(b) and the time period to do so. It further accurately informed Plaintiff that the hospital "had the right, as do all creditors, to initiate suit during the validation period …." *Zemeckis*, 679 F.3d at 636 (citing *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997)). Put simply, Brehm's statement about Plaintiff's validation rights and the ability to sue within the validation period was completely accurate and does "not … rise[] to a violation of Section 1692g(b)." *Zemeckis* at 637.

On this basis alone Plaintiff's attempted overshadowing claim fails. But Plaintiff's attempted overshadowing claim fails for the additional reason that Plaintiff does not plead *how*

Brehm's statement of the amount of the debt or statement about the ability to commence suit during the validation period could possibly contradict or distract from Plaintiff's right to dispute the debt, which was clearly set forth in the Letter.  [Am. Compl. Ex. A.]

In short, Brehm clearly informed Plaintiff of the amount of the debt, as well as his right to dispute the debt pursuant to § 1692g(b).  Plaintiff has not offered any legitimate claim as to how his dispute right was overshadowed.  Nor did he dispute the debt.  His attempted § 1692g claim therefore fails as a matter of law.

**IV.    Brehm Accurately Stated Its Involvement in the Collection Process.**

As discussed in Section III above, Brehm informed Plaintiff of its role in the process of attempting to collect Plaintiff's debt.  [*See* Am. Compl. Ex. A ("The above account has been referred to me for collection by Account Recovery Specialists, Inc. on behalf of the above creditor.").]  Brehm further informed Plaintiff that, at the time of the Letter, no attorney had personally reviewed the <u>particular circumstances</u> of Plaintiff's <u>account</u>, and advised that if Plaintiff failed to contact Brehm, the hospital may consider additional remedies to recover the debt.  [*Id.*]

From Brehm's accurate statement of its role in the collection process, Plaintiff attempts to allege that "[i]t is deceptive to the consumer to have a letter signed by an attorney while claiming no attorney has reviewed the <u>letter</u>," and that "[i]t is also improper for an attorney to sign a <u>letter</u> they have not reviewed."  [Am. Compl. ¶¶ 44-45.]  Plaintiff now expands by alleging in the amended complaint that Brehm threatened to take an action that could not be legally taken or that was not intended to be taken, and threatened "Plaintiff with an imminent lawsuit …."  [Am. Compl. ¶¶ 50(b), 55.]  Plaintiff's attempted claim fails for three reasons.

First, Plaintiff misstates the text of the Letter.  Brehm did <u>not</u> state that no attorney had reviewed *the Letter*; Brehm stated that no attorney had reviewed the particular circumstances of

Plaintiff's *account* as of the date the Letter was sent.  [*Id*. at Ex. A.]  Plaintiff's own pleadings confirm this.  [*Id*. at ¶ 43 (emphasis added) ("However, the paragraph before the end of the letter states, 'At this time no attorney with this office has personally reviewed the particular circumstances of **your account**.'").  The Letter was a required FDCPA initial notice sent to, among other things, alert Plaintiff to his rights under the Act.  When an attorney sends an initial collection notice, the attorney is not obligated to have made any decisions on how the collection will proceed.  Plaintiff's purported claim simply is not based on an accurate reading of the Letter.

Even if it were, Plaintiff's attempted claim fails for a second reason: the Letter accurately informed Plaintiff that no attorney had yet reviewed his particular account, using, verbatim, the disclaimer first approved by the Second Circuit in *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 365 (2d Cir. 2005). ("the defendants' letter included a clear disclaimer explaining the limited extent of their involvement in the collection of Greco's debt … [i]n light of the disclaimer, we agree with the district court that the least sophisticated consumer, upon reading this letter, must be taken to understand that no attorney had yet evaluated his or her case … [a]ccordingly … the defendants had not used any 'false, deceptive, or misleading representation or means in connection with the collection of any debt ….").

Third, Plaintiff has not alleged sufficient facts to establish that Brehm "threatened" to take an action that it could not take, or did not intend to take, or that Brehm even "threatened" to bring suit against Plaintiff for the unpaid financial obligation to Geary hospital.

The Letter informed Plaintiff that Geary "<u>may</u> consider additional remedies to recover the balance due" if Plaintiff elected not to respond to the Letter.  [Am. Compl. Ex. A (emphasis added).]  This is an accurate statement—a creditor has the right to pursue additional remedies during the validation period, including "the right … to initiate suit …."  *Zemeckis*, 679 F.3d at 636 (citing *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997)).

Moreover, informing a consumer of an event that "may" occur does not state a claim. *See Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762, 764 (7th Cir. 2018) ("The challenged statement is not false or misleading because 'may' does not mean 'will' ...."). The Fair Trade Commission has also explained that "[a] debt collector may state that a certain action is possible, if it is true that such action is legal and is frequently taken by the collector or creditor ...." *Brown v. Card Service Center*, 464 F.3d 450, 455 (3d Cir. 2006) (quotation marks omitted and citing FTC Stmts. of Gen. Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50106 (1988)).

Brehm accurately informed Plaintiff that the hospital *may* take an action that it legally was entitled to take if Plaintiff did not respond to the Letter—i.e., consider additional remedies to recover the unpaid financial obligation. Those remedies could include initiating a lawsuit to recover the balance. Plaintiff has not pled that Brehm does not frequently sue to recover unpaid financial obligations, or that Brehm did not intend to sue Plaintiff if Plaintiff failed to respond to the Letter.[5]

Plaintiff's attempted claim accordingly fails as a matter of law.

## V.   Plaintiff Failed to Allege a Viable Claim under the FDCPA's "Catchall" Provision (§ 1692f).

Plaintiff's final attempt to avail himself of the FDCPA involves the FDCPA "catchall" provision—codified at § 1692f. This effort fails because Plaintiff does not allege <u>independent necessary conduct</u> to support it.

In addition to his more specific allegations under §§ 1692e and 1692g, Plaintiff asserts a conclusory claim under § 1692f. Section 1692f is a "catchall" provision, but it only applies to alleged conduct "that is unfair but is not specifically identified in any other section of the

---

[5] Indeed, Brehm *did* sue Plaintiff to recover the unpaid financial obligation to Geary Hospital. *See Geary Community Hospital v. Seretse Khama Young*, No. 2018-LM-000033 (Geary County Kansas District Court, filed January 17, 2018).

FDCPA." *Rush v. Portfolio Recovery Associates LLC*, 977 F. Supp.2d 414, 432 (D.N.J. 2013). Stated differently, conduct that is pled in support of claims under other specific subsections of the Act—e.g., § 1692e or § 1692g—"cannot be the basis for a separate claim under § 1692f." *Turner v. Professional Recovery Servs., Inc.*, 956 F. Supp.2d 573, 580 (D.N.J. 2013); *see also Baker v. Allstate Fin. Servs., Inc.*, 554 F. Supp.2d 945, 953 (D. Minn. 2008); *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp.2d 643, 667 (S.D.N.Y. 2006); *Chalik v. Westport Recovery Corp.*, 677 F. Supp.2d 1322, 1330 (S.D. Fla. 2009).

Here, Plaintiff fails to allege any conduct independent of the conduct he alleges in support of his attempted §§ 1692e and 1692g to support his purported § 1692f claim. Plaintiff's attempted § 1692f claim therefore fails as a matter of law.

## CONCLUSION

Plaintiff lacks Article III standing because he has not suffered—or alleged—a concrete injury-in-fact.

Even if he had standing, Brehm clearly and accurately communicated the amount of Plaintiff's debt in the challenged Letter, including interest accrued to date. Likewise, Brehm accurately stated its involvement in the collection process to Plaintiff in the Letter.

For the reasons stated above, Brehm respectfully requests the Court dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6).

**BASSFORD REMELE**
*A Professional Association*

Dated:  January 16, 2019

By:  s/ *Michael A. Klutho*
Michael A. Klutho (#78069)
100 S. Fifth Street, Suite 1500
Minneapolis, Minnesota 55402-1254
Telephone:  612-333-3000
Fax:  612-333-8829
mklutho@bassford.com
*Attorneys for Law Office of Amber M.*
*Brehm*